## COLIN CAMPBELL
*v.*
## ROBERT STEWART.

1. PARTNERS. Where for convenience a firm keeps their funds on deposit, in a bank, in the name of one member of the firm, by consent between them, and although to show the condition of the business of the firm, and where the funds are, the book keeper charges the member, in whose name it is deposited, with the same; and the money is lost by the insolvency of the bank, it will be the loss of the firm, and not of the individual partner in whose name it is deposited.

WRIT OF ERROR to the Superior Court of Chicago.

This was a bill in chancery for an account filed by Colin Campbell against Robert Stewart in the Superior court of Chicago; the bill alleged that complainant and defendant formed a copartnership on the 15th December, 1860, to pack pork, under the firm name of R. Stewart & Co. Both parties contributed capital in the outset, and added to the original capital from time to time, and were to share the profits and loss of the business equally. They continued doing business together till September, 1861; *that during the same time defendant carried on the wood and coal business on his private account, in which the complainant had no interest;* that during the time R. Stewart & Co. carried on business, defendant frequently took large sums of money from the firm of R. Stewart & Co., charged it to himself, and used it in his private business; that on the 10th of April, 1861, the defendant made a sale of $5,109.33 of pork belonging to R. Stewart & Co., and took that sum and charged it to his own account on the books of the firm of R. Stewart & Co., mixed it up with his own individual funds, and deposited it with his own banker and used it, or the most of it, in his own private business — but at any rate, so dealt with it, that it was entirely beyond the control of the complainant. This was the last large sale of pork belonging to R. Stewart & Co. During the same time, defendant deposited all

the money of his wood and coal business, amounting to a large sum, with Tinkham & Co., mingled the same with funds which he had received from the firm of R. Stewart & Co., so that the separate amounts could not be recognized; that Tinkham & Co. failed June 7th, 1861, and at the time of their failure, the defendant had on deposit to *his* credit $2,264.07. This sum he has totally lost, as Tinkham & Co. are entirely worthless; and in order to save himself from as much of the loss as he possibly can, he now claims that $2,114 of this sum belonged to the firm of R. Stewart & Co., and insists that complainant should bear half of the loss of that sum.

The bill contained a prayer for process and an account of the partnership dealings and transactions.

Defendant answered the bill, and admits that a partnership was formed substantially as charged in the bill. He alleges in his answer that it was agreed between the parties, that the firm should not open a bank account, but all moneys received should, to save extra trouble and clerk hire, be deposited and kept in the name of defendant with his bankers E. I. Tinkham & Co., who had been defendant's bankers as well as the complainants. That the agreement was carried into effect, and the money of the firm so deposited, and as required, it was drawn out on the checks of defendant. That the sale of pork mentioned in the bill, from which the $5,109.33 was received, was to one Ralston, and the sale was completed by a delivery of the pork on the 18th of April, 1861, that the bill therefor was presented the next day, and paid for, in two checks for Illinois currency, which was at a discount of twenty per cent.

That the firm of Stewart & Co. was indebted to Meadowcraft in the sum of $2,025.00, which would soon fall due, and to secure which two hundred barrels of pork was pledged. That he refused to take Illinois bank bills in payment and release the pork; but E. I. Tinkham & Co. agreed, if defendant would deposit the checks in their bank, that they would pay Meadowcraft, and charge no discount on the checks. That the checks were so deposited, and complainant knew the circumstances and expressed no dissent to the arrangement. That

complainant had the same control over the money that defendant had.

That the whole of the sum of $2,114.07 remaining to his credit on his deposit account with E. I. Tinkham & Co., is the money of the firm of R. Stewart & Co. He denies that he ever made any false pretenses to complainant in reference to the account or otherwise; also, that he ever refused to come to a full, fair and complete settlement of the firm accounts of R. Stewart & Co., but had always been ready and willing, and repeatedly offered to do so, but complainant has refused. A replication was filed to this answer, and the cause was tried on bill, answer and proofs.

Meadowcraft swears that he held the note of Stewart, or of R. Stewart & Co., which, he does not remember, for about $2,000, guaranteed by E. I. Tinkham, & Co., also by two hundred barrels of pork or lard, which, he does not remember, as collateral security; that the note was paid, but not when it was first due, but there was some difficulty about the kind of funds; Stewart insisting upon Illinois bank bills. The amount of the note was passed to the credit of witness, with E. I. Tinkham & Co., and he checked it out. Witness also loaned R. Stewart & Co. four hundred dollars at a different time, which was paid before it was due.

Ambler testified, that he was a member of the banking firm of E. I. Tinkham & Co.; that Stewart had a bank account with them between December, 1860, and June, 1861; the bank had no account with R. Stewart & Co.; that his deposits, from the 13th of December, 1860, to the 28th of May, 1861, amounted to $15,978.34, making, with the balance due him on the former day, $17,045.82; the amount drawn or charged to him between those days, was $14,781.78, leaving a balance due him on the bank books of $2,264.07.

Charles A. Stewart, who acted as bookkeeper for R. Stewart & Co., says that he kept all of the accounts for the firm. He says that the depreciated money received was paid out or deposited in bank in the name of R. Stewart; that it was drawn out as needed on Robert Stewart's checks, some of

which complainant knew of at the time. He used such checks in paying out money in the business. Complainant directed a deposit of a small amount to be made in the bank after the 19th of April, 1861, saying he thought it safer in the bank than to hold it on hand. Witness heard complainant say it was better to leave the money in bank than to draw it out, as it might get better by leaving it there, and did not think it would get worse. Money was checked out for the use of the firm after the 19th of April, 1861.

Davis testified that he saw complainant, in the spring of 1861, hand a roll of money to young Stewart and tell him to deposit it at once, as currency was depreciating every hour. That young Stewart replied, that he would, and said Tinkham kept his bank open longer than others in the city. He says that complainant said to him, that they would not purchase pork the next winter, as they had lost so much in the depreciation of Illinois currency. That complainant, in purchasing pork, sent witness to Stewart's office for money to pay for it, and he got some currency and a check on Tinkham's bank for the balance, and handed it to complainant, who paid it out to farmers of whom pork had been purchased, and told them where they would find the bank.

Malcolm Stewart testifies, that he asked complainant how they did on pork the previous winter, when he replied that they did pretty well, but had lost on Illinois currency. That it was in June, 1861, that this conversation occurred. He also told witness that the money was in bank.

Prentice testified, that, in the summer of 1861, complainant, in answer to an inquiry, said the firm had not lost on pork, but had lost by the depreciation of currency.

Taylor states that he was present when the parties agreed that Stewart should be the outside and financial member of the firm, and Campbell the inside and business man of the firm. That witness knew of checks being drawn on Tinkham & Co., to pay for pork purchased by complainant.

The court rendered a decree in which it was found that the money of the firm of R. Stewart & Co., was deposited with E.

I. Tinkham & Co., with the approbation of complainant, and in the usual course of business of the firm. And the court found, that it would be inequitable to charge the defendant with the loss of the money, which has arisen from the failure of E. I. Tinkham & Co. The court then decreed a dissolution of the copartnership, with the right to complainant to have from the moneys due from E. I. Tinkham & Co., so much as is owing to him, on account of his interest in the firm of R. Stewart & Co., which is found to be $931.45, but one-half of the necessary expense of collecting the money may be reserved from the amount collected. And that complainant pay the costs of the suit.

Complainant prosecutes this writ of error to reverse the decree, and assigns for error: That the decree is against the law and the evidence; that the decree should have been for complainant and against defendant.

Messrs. HERVEY & GALT, for the plaintiff in error.

If one partner of a firm can take money from the firm, charge it to his own account, and use it for his own purposes as this defendant did, and when the money so taken and charged, is subsequently lost through the failure of the bankers with whom it was deposited, or from any other cause, either of negligence or misfortune, turn round on his copartner and require him to share the loss, there is an end of any safety in transactions between partners.

From the moment that the defendant took this $5,109.33, and charged it to himself as he had an undoubted right to do, mixed it with his private funds derived from other sources, deposited it with his banker to his own individual credit, used it in his own private business, it became as much his own money as if he had received it from a stranger, and it is unjust and inequitable in the highest degree, that because the place of deposit selected by the defendant turned out to be insecure, and the money has been lost, that he should now seek to compel the complainant to share the loss. *Mumford* v. *Murray*, 6 Johns. Ch. 1.

Messrs. ARINGTON & DENT, for the defendant in error.

Turning to the decree so justly made by the court below, we repeat its language, and in so doing epitomize the evidence in saying, "that the moneys of R. Stewart & Co., which were deposited with E. I. Tinkham & Co., were so deposited with the approbation of the complainant, and in the usual course of the business of said firm of R. Stewart & Co." The conclusion of the chancellor, that it would be inequitable to charge the defendant with the loss of the money was therefore inevitable.

The case from 6 Johns. Ch., cited by the counsel, bears no analogy to this. There, a partner was charged with moneys of his firm improperly, and without the authority of his copartner, suffered by him to pass into the hands of a third party, to be used by such party. And this charge was made, too, because the party thus charged had been guilty of fraud towards the party complaining. But here, every element thus made the basis for such charge is wanting. For the defendant acted with the most entire good faith, and the money in question was properly deposited with Tinkham & Co., with the authority of Campbell, and was kept there, too, at his request, and for his benefit. And as is so fully shown, there is no ground for imputing negligence, unskillfulness, fraud or misconduct to the defendant. Having acted fairly and properly in every particular, and, in each step he took, having been supported by the partnership agreement, and the advice and concurrence of the complainant, the plainest and most self-evident dictates of justice entitle him to an affirmance of the decree, and to ask that thereby the loss may be shared according to the terms of the copartnership.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This controversy grows out of a loss of money by the failure of E. I. Tinkham & Co's bank. Plaintiff in error contends that the moneys deposited in the bank belonged to defendant

in error, whilst he contends, that it was the property of R. Stewart & Co. It appears that the parties to this bill were partners, and by mutual agreement, the funds of the firm were deposited with E. I. Tinkham & Co., in the name and on the account of defendant in error. He already having an account with these bankers, it was supposed to be more convenient and preferable to opening an account with them in the name of the firm. It appears, that at one time the firm had thus deposited as much as $5,109.33. But afterwards defendant in error drew out on his check, $2,025, which was applied to the payment of a note given by him, to Meadowcraft, and other sums, as he alleges to pay debts of the firm, leaving still on deposit $2,114 belonging to the firm.

Their book-keeper testifies, that defendant in error advanced much the largest portion of the capital. That the business of the firm had ceased and was closed, except a few small articles of joint property remained. That plaintiff in error was entitled to $935.45 as his share of the money on deposit, and the remainder belonged to defendant in error.

It is insisted that inasmuch as the deposit account of the firm moneys was kept in the name of defendant in error, that it amounted to an appropriation of the whole sum to his use, and that he must sustain the loss, and account to plaintiff in error for his portion of the funds. The evidence shows that it was so kept as a matter of convenience by agreement of the parties. And it appears that the funds were not exclusively under the control of defendant in error, as plaintiff in error procured checks at all times when he desired, and thus drew out and used funds in the business of the firm. And after bank paper began to depreciate, he was on several occasions consulted as to what he preferred should be done with the funds, when he uniformly gave it as his opinion, that they should be permitted to remain in E. I. Tinkham & Co's bank, where they were deposited. He also in speaking of the business of the firm after the bank failed, stated that it had lost on depreciated bank paper. And the record shows no other loss, and that it refers to this loss, seems to be clear.

It was likewise insisted, that the charge of the whole $5,109.33 to defendant in error, appearing upon the firm books, is evidence that he had appropriated the whole fund to his own use. It appears that this entry was made by the book-keeper for convenience, and as all parties, after it was made, understood the money on deposit to belong to the firm, we would not be warranted in the conclusion that it was appropriated to the use of defendant in error. It was an entry of the book-keeper made simply to indicate in which partner's hands the funds were.

Although the defendant in error drew out the larger portion of this money, it fails to appear what portion was for his individual use. One note of five hundred dollars was given in the firm name to Meadowcraft, and was paid out of these funds. Again, it does not appear how much capital defendant in error was to put into the firm. It appears that plaintiff in error put in only seven hundred dollars, and we are not informed whether any portion of the sum put in by defendant in error was loaned to the firm. It appears, however, that a portion of the funds was taken from his wood and coal business, which would seem to indicate that it must have been loaned; and if so, he had the right to withdraw it from the firm when he chose. If the firm was in debt, he had the right to pay the debts out of the fund belonging to the firm.

But even suppose that all of this $5,109.33 belonged to the firm, and there had been no debts owing by the firm, either to defendant in error or others, was he justified in drawing out these funds? If it was all firm money, he strictly would not, but would be liable to refund it to the firm. But suppose that were done, how could it benefit plaintiff in error? As partners, unless otherwise agreed, they would share equally in both profits and losses. Thus we have seen that the firm loss by the failure of E. I. Tinkham & Co. was $2,114, half of which would have to be borne by plaintiff in error, and the other half by defendant in error. One half of this loss would be greater than all of the funds he would be entitled to receive, even if the debt was collected of E. I. Tinkham & Co. So

to require defendant in error to return the money to the firm, would avail nothing, as it would all be returned to him on an accounting between the partners.

For these reasons we are of the opinion that the judgment of the court below must be affirmed.

*Judgment affirmed.*